**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| MELVYN KLEIN, Derivatively On Behalf Of BLUEBIRD BIO, INC., | Case No.: |
| Plaintiff, | |
| vs. | **JURY DEMANDED** |
| NICK LESCHLY, MARK VACHON, JOHN O. AGWUNOBI, WENDY L. DIXON, DANIEL S. LYNCH, WILLIAM R. SELLERS, AND CHIP BAIRD, | |
| Defendants, | |
| -and- | |
| BLUEBIRD BIO, INC., | |
| Nominal Defendant. | |

**VERIFIED SHAREHOLDER DERIVATIVE COMPLAINT**

Plaintiff Melvyn Klein ("Plaintiff"), by and through his undersigned counsel, derivatively on behalf of Nominal Defendant bluebird bio, Inc. ("bluebird" or the "Company"), submits this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiff's allegations are based upon his personal knowledge as to himself and his own acts, and upon information and belief, developed from the investigation and analysis by Plaintiff's counsel, including a review of publicly available information, including filings by bluebird with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

**NATURE OF THE ACTTION**

1.      This is a shareholder derivative action brought on behalf of and for the benefit of the Company, against certain of its officers and/or directors named as defendants herein seeking to remedy Defendants (defined below) violations of Sections 10(b) and 21D of the Securities Exchange Act of 1934 (the "Exchange Act"), and their breaches of fiduciary duties and other wrongful conduct as alleged herein and that occurred from September 4, 2019 to the present (the "Relevant Period").  Defendants' actions have caused, and will continue to cause, substantial financial harm and other damages to the Company, including damages to its reputation and goodwill.

2.      bluebird is a biotechnology company that engages in researching, developing, and commercializing transformative gene therapies for severe genetic diseases and cancer.  The Company's gene therapy programs include, among others, LentiGlobin (bb1111) for the treatment of sickle cell disease ("SCD").

3.      In May 2020, in the midst of the COVID-19 pandemic, the Company announced that it expected to submit a U.S. Biologics Licensing Application ("BLA") to the U.S. Food and Drug Administration ("FDA") for LentiGlobin for SCD in the second half of 2021.

4.      Throughout the Relevant Period, the Company made false and/or misleading statements and/or failed to disclose that: (a) data supporting the Company's BLA submission for LentiGlobin for SCD was insufficient to demonstrate drug product comparability; (b) the Company downplayed the foreseeable impact of disruptions related to the COVID-19 pandemic on the Company's BLA submission schedule for LentiGlobin for SCD, particularly with respect to manufacturing; (c) as a result of all the foregoing, it was foreseeable that the Company would not submit the BLA for LentiGlobin for SCD in the second half of 2021; and (d) as a result, the

Company's public statements were materially false and misleading at all relevant times.

5.     On November 4, 2020, the Company disclosed that it would no longer apply for FDA approval of its LentiGlobin product as a treatment for SCD in the second half of 2021 as expected.  Instead, citing "feedback" from the FDA requiring the Company to provide additional data "to demonstrate drug product comparability" for LentiGlobin for SCD, "alongside COVID-19 related shifts and contract manufacturing organization COVID-19 impacts," bluebird adjusted its submission timing to late 2022.

6.     On this news, the Company's stock price fell $9.72 per share, or 16.6%, to close at $48.83 per share on November 5, 2020.

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff's claims raise a federal question under Section 10(b) of the Exchange Act, 15. U.S.C. § 78j(b), and Section 21D of the Exchange Act, 15 U.S.C. § 78u-4(f).  Plaintiff's claims also raise a federal question pertaining to the claims made in the Securities Class Action (defined below) based on violations of the Exchange Act.

8.     This Court has jurisdiction over each defendant named herein because each defendant is either a corporation that conducts business in and maintains operations in this District or is an individual who has sufficient minimum contacts with this District to render the exercise of jurisdiction by the District courts permissible under traditional notions of fair play and substantial justice.

9.     Venue is proper in this Court in accordance with 28 U.S.C. § 1391 because the Company's is incorporated in Delaware.

## PARTIES

**Plaintiff**

10.     ***Plaintiff Melvyn Klein*** ("Plaintiff Klein") acquired the Company securities and will continue to hold bluebird shares throughout the pendency of this action.  Plaintiff Klein will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

**Nominal Defendant**

11.     ***Nominal Defendant bluebird*** is a Delaware corporation with its principal executive offices located at 60 Binney Street, Cambridge, Massachusetts 02142.  bluebird common stock trades in an efficient market on the NASDAQ under the ticker symbol "BLUE."

**Director Defendants**

12.     ***Defendant Nick Leschly*** ("Leschly") is a director of the Company and has served as the President and Chief Executive Officer ("CEO") since September 2010.  Previously, Defendant Leschly served as the Interim Chief Executive Officer from March 2010 to September 2010.  Defendant Leschly is a defendant in the Securities Class Action (defined below).

13.     ***Defendant Mark Vachon*** ("Vachon") is a director of the Company and has been since July 2014.  Defendant Vachon is the Chairperson of the Audit Committee.

14.     ***Defendant John O. Agwunobi*** ("Agwunobi") is a director of the Company and has been since June 2017.  Defendant Agwunobi is the Chairperson of the Nominating and Corporate Governance Committee.

15.     ***Defendant Wendy L. Dixon*** ("Dixon") is a director of the Company and has been since April 2013.  Defendant Dixon is a member of the Audit Committee and the Compensation Committee.

16.     ***Defendant Daniel S. Lynch*** ("Lynch") is a director of the Company who has served

as Chairman of the Board since May 2011.  Defendant Lynch is the Chairperson of the Compensation Committee.  He is also a member of the Audit Committee.

17.     **Defendant Denice Torres** ("Torres") is a director of the Company and has been since August 2020.  Defendant Torres is a member of the Compensation Committee and the Nominating and Corporate Governance Committee.

18.     **Defendant Ramy Ibrahim** ("Ibrahim") is a director of the Company and has been since January 2021.  Defendant Ibrahim is a member of the Nominating and Corporate Governance Committee.

19.     **Defendant William R. Sellers** ("Sellers") is a director of the Company and has been since September 2019.

20.     Defendants Leschly, Vachon, Agwunobi, Dixon, Lynch, Torres, Ibrahim and Seller are herein referred to as "Director Defendants."

**Officer Defendant**

21.     **Defendant Chip Baird** ("Baird") has served as the Company's Chief Financial Officer ("CFO") at all relevant times.  Defendant Baird is a defendant in the Securities Class Action (defined below).

22.     The Director Defendants and Defendant Baird are collectively referred to herein as "Defendants".

## THE COMPANY'S CORPORATE GOVERNANCE

23.     As members of Board, the Director Defendants were held to the highest standards of honesty and integrity and charged with overseeing the Company's business practices and policies and assuring the integrity of its financial and business records.

24.     The conduct of the Director Defendants complained of herein involves a knowing

and culpable violation of their obligations as directors and officers of bluebird, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its investors that the Director Defendants were aware posed a risk of serious injury to the Company

## DUTIES OF THE DIRECTOR DEFENDANTS

25.     By reason of their positions as officers, directors, and/or fiduciaries of bluebird and because of their ability to control the business and corporate affairs of bluebird, the Director Defendants owed the Company and its shareholders the fiduciary obligations of trust, loyalty, good faith and due care, and were and are required to use their utmost ability to control and manage bluebird in a fair, just, honest, and equitable manner.  The Director Defendants were and are required to act in furtherance of the best interests of bluebird and its shareholders.

26.     Each director and officer of the Company owes to bluebird and its shareholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company and in the use and preservation of its property and assets, as well as the highest obligations of fair dealing.  In addition, as officers and/or directors of a publicly held company, the Director Defendants had a duty to promptly disseminate accurate and truthful information regarding the Company's operations, finances, financial condition, and present and future business prospects so that the market price of the Company's stock would be based on truthful and accurate information.

27.     The Director Defendants, because of their positions of control and authority as directors and/or officers of bluebird, were able to and did, directly and/or indirectly, exercise control over the wrongful acts complained of herein, as well as the contents of the various public statements issued by the Company.  Because of their advisory, executive, managerial and directorial positions with bluebird, each of the Defendants had access to adverse non-public

information about the financial condition, operations, sales and marketing practices, and improper representations of bluebird.

28.     To discharge their duties, the officers and directors of bluebird were required to exercise reasonable and prudent supervision over the management, policies, practices, and controls of the financial affairs of the Company.  By virtue of such duties, the officers and directors of bluebird were required to, among other things:

(a)     Ensure that the Company complied with its legal obligations and requirements, including acting only within the scope of its legal authority and disseminating truthful and accurate statements to the SEC and the investing public;

(b)     Conduct the affairs of the Company in an efficient, businesslike manner so as to make it possible to provide the highest quality performance of its business, to avoid wasting the Company's assets, and to maximize the value of the Company's stock;

(c)     Properly and accurately guide investors and analysts as to the true financial condition of the Company at any given time, including making accurate statements about the Company's business prospects, and ensuring that the Company maintained an adequate system of financial controls such that the Company's financial reporting would be true and accurate at all times;

(d)     Remain informed as to how bluebird conducted its operations, and, upon receipt of notice or information of imprudent or unsound conditions or practices, make reasonable inquiries in connection therewith, take steps to correct such conditions or practices, and make such disclosures as necessary to comply with federal and state securities laws;

(e)     Ensure that the Company was operated in a diligent, honest, and prudent

manner in compliance with all applicable federal, state and local laws, and rules and regulations; and

(f)      Ensure that all decisions were the product of independent business judgment and not the result of outside influences or entrenchment motives.

29.      Each Director Defendant, by virtue of his or her position as a director and/or officer, owed to the Company and to its shareholders the fiduciary duties of loyalty, good faith, and the exercise of due care and diligence in the management and administration of the affairs of the Company, as well as in the use and preservation of its property and assets.  The conduct of the Director Defendants complained of herein involves a knowing and culpable violation of their obligations as directors and officers of bluebird, the absence of good faith on their part, and a reckless disregard for their duties to the Company and its shareholders that the Director Defendants were aware or should have been aware posed a risk of serious injury to the Company.

30.      The Director Defendants breached their duties of loyalty and good faith by causing the Company to misrepresent the information as detailed *infra*.  The Director Defendants' subjected the Company to the costs of defending, and the potential liability from, the securities class action (and related lawsuits).  As a result, bluebird has expended, and will continue to expend, significant sums of money.

31.      The Director Defendants' actions have irreparably damaged bluebird's corporate image and goodwill.

## THE FALSE AND MISLEADING STATEMENTS

32.      On May 11, 2020, the Company issued a press release providing an operational and business update and reporting its first quarter 2020 financial results (the "First Quarter 2020 Press Release"). The First Quarter 2020 Press Release promoted the Company's anticipated BLA

submission for LentiGlobin for SCD, reporting that the Company had a "general agreement with [the] FDA that the clinical data package required to support a BLA submission for LentiGlobin™ for [SCD] will be based on data from a portion of patients in the HGB-206 study Group C that have already been treated," and that the Company planned "to seek an accelerated approval and expects to submit the [BLA] for [SCD] in the second half of 2021," despite "anticipat[ing] additional guidance from FDA regarding the commercial manufacturing process, including suspension lentiviral vector."

33.     The First Quarter 2020 Press Release also quoted Defendant Leschly, who assured the market that the Company had accounted for COVID-19's impact on its ongoing operations, including the BLA submission for LentiGlobin for SCD.  Specifically, Defendant Leschly touted that the Company "ha[s] alignment with FDA on [its] clinical data package and filing path for LentiGlobin for [SCD], which accelerates [its] planned base case filing timeline into 2021"; that "after a rigorous review of all operational plans to reflect COVID-19 uncertainties and recent program shifts, [the Company] ha[s] prioritized [its] core . . . programs to drive . . . filings in 2021 for [*inter alia*] . . . SCD"; that "[t]his prioritization effort and operational review has led to significant efficiencies . . . across [the] company"; and that "[t]he fundamentals of [the Company's] business remain sound and [its] newly revised operating plan enables [it] to execute on the 2022 vision while putting [it] on a path towards financial sustainability."

34.     On May 11, 2020, the Company also hosted a conference call with investors and analysts to discuss its first quarter 2020 results (the "First Quarter 2020 Conference Call").  In his prepared remarks on that call, Defendant Leschly stated that "[o]n the [SCD] front, [Defendants are] happy to share that [they] have reached general alignment with the FDA on an accelerated approval path for LentiGlobin in [SCD] with plans to file for approval in the second half of 2021,"

and that, "[o]verall, 2021 is on track to deliver several major milestones, including . . . the US filing[] of . . . LentiGlobin in sickle cell."

35.     In addition, on the First Quarter Conference Call, in response to a Guggenheim Securities LLC analyst question regarding manufacturing for LentiGlobin, Defendant Leschly further touted  that Defendants were "quite confident [in] the combination of the various forms of manufacturing," and that Defendants "wouldn't go out and try to commit to a regulatory timeline if [they] didn't feel that [they] could deliver on that demand" because it "would be a really, really hard thing for the patient population, not to mention bluebird, if [they] were to do that," and Defendants were "quite confident in the ramp and a pretty broad range in the ramp as [they] get going in US," reiterating that, "quite honestly, [they] would not be signing up for a regulatory timeline or a range of timeline if [they] didn't feel that [they] had the execution infrastructure behind it."

36.     On the First Quarter 2020 Conference Call, in response to an Evercore ISI analyst who said that he was "surprised it's going to take over a year given everything we know now" for the LentiGlobin SCD BLA filing, and questioning whether Defendants' "filing timeline assume[s] that some . . . follow-up can be submitted as a supplement to an amendment," Defendant Leschly assured those on the call that the Company was "liberate[d]" to "move quite aggressively" despite COVID-19:

> [A]s you think about some of the original plan, right, and you look at HGB-210 and you look at that, the timing there given also some of the complexity going on in the world right now as it relates to the [COVID-19] pandemic and the enrollment time frames that that brings, this really liberates us to move quite aggressively despite some of those changes given how far along we already were on HGB-206. So, I think between the data and the strategy and the willingness and the collegiality that the agency's showing on this, it's actually a tremendous – at least from our perspective, we believe is a tremendously positive outcome.

37.     That same day, the Company filed a quarterly report on Form 10-Q with the SEC,

reporting the Company's financial and operating results for the quarter ended March 31, 2020 (the "First Quarter 2020 10-Q"). The First Quarter 2020 10-Q touted that "[b]ased on discussions with the FDA," the Company "believe[s] that [it] may be able to seek accelerated approval for LentiGlobin for SCD in the [U.S.] on the basis of clinical data from Group C of [their] ongoing HGB-206 clinical study, with a potential first submission in the second half of 2021"; and that Defendants adjusted "the timing of investment in ongoing clinical studies to reflect COVID-19 related delays in enrollment."

38.     Appended as an exhibit to the First Quarter 2020 10-Q were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein Defendants Leschly and Baird certified that "the [First Quarter 2020 10-Q] fully complies with the requirements of Section 13(a) or 15(d) of the Securities Exchange Act of 1934" and that "the information contained in the [First Quarter 2020 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company."

39.     On August 5, 2020, the Company issued a press release announcing its second quarter 2020 financial results and recent operational progress (the "Second Quarter 2020 Press Release"). The Second Quarter 2020 Press Release stated that the Company had "treated the first sickle cell patient with drug product manufactured with suspension-based lentiviral vector (sLVV)," which "is intended to allow for larger scale and more efficient manufacturing of LVV," and that "[t]he company intends to submit data supporting the use of sLVV to the FDA as part of its submission for regulatory approval of LentiGlobin™ gene therapy for SCD in the second half of 2021."

40.     In addition, the Second Quarter 2020 Press Release touted that "[o]n June 12, 2020, the Company bio presented new data showing a near elimination of [SCD]-related vaso-occlusive

crises and acute chest syndrome in the phase 1/2 clinical study of bluebird bio's LentiGlobin™ gene therapy for [SCD] at 25th EHA [European Hematology Association] Congress," and that the Company "plan[s] to submit its BLA to the FDA based on an analysis of clinical data from this study," while reiterating that bluebird "continues to plan to submit the U.S. BLA for SCD in the second half of 2021."

41.     On August 5, 2020, the Company filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended June 30, 2020 (the "Second Quarter 2020 10-Q").  The Second Quarter 2020 10-Q contained substantively the same statements as referenced in ¶38, regarding the Company's anticipated BLA submission for LentiGlobin for SDA in the second half of 2021 based on the Company's discussions with the FDA, and Defendants' accounting for COVID-19 related delays.

42.     Appended as an exhibit to the 2Q20 10-Q were substantively the same SOX certifications as referenced in ¶ 39, signed by Defendants Leschly and Baird.

43.     The statements referenced in ¶¶ 33-42 were materially false and misleading because the Company made false and/or misleading statements, as well as failed to disclose material adverse facts about its business, operations, and compliance policies.  Specifically, the Company made false and/or misleading statements and/or failed to disclose that: (a) data supporting the Company's BLA submission for LentiGlobin for SCD was insufficient to demonstrate drug product comparability; (b) the Company downplayed the foreseeable impact of disruptions related to the COVID-19 pandemic on the Company's BLA submission schedule for LentiGlobin for SCD, particularly with respect to manufacturing; (c) as a result of all the foregoing, it was foreseeable that the Company would not submit the BLA for LentiGlobin for SCD in the second half of 2021; and (iv) as a result, the Company's public statements were materially false and

misleading at all relevant times.

### THE TRUTH EMERGES

44.     On November 4, 2020, the Company issued a press release reporting its third quarter 2020 financial results and highlighting operational progress (the "Third Quarter 2020 Press Release").  Therein, the Company disclosed that it would no longer apply for FDA approval of its LentiGlobin product as a treatment for SCD in the second half of 2021 as expected.  Instead, citing "feedback" from the FDA requiring the Company to provide additional data "to demonstrate drug product comparability" for LentiGlobin for SCD, "alongside COVID-19 related shifts and contract manufacturing organization COVID-19 impacts," the Company adjusted its submission timing to late 2022.  The Third Quarter 2020 Press Release stated:

> [BLA] SUBMISSION - Today, bluebird bio announces confirmation of its general agreement with the [FDA] that the clinical data package required to support a BLA submission for LentiGlobin™ for [SCD] (bb1111) will be based on data from a portion of patients in the HGB-206 study Group C that have already been treated. bluebird bio is also announcing today that it has reached general agreement with FDA on its path to transition to commercial manufacturing using an analytical comparability strategy, including suspension-based lentiviral vector (sLVV) . . . . However, FDA requested the use of drug product manufactured from [SCD] patient cells in addition to healthy donors as well as commercial lentiviral vector to demonstrate drug product comparability. Given this feedback, alongside COVID-19 related shifts and contract manufacturing organization COVID-19 impacts, bluebird is adjusting its submission timing to late 2022.  (Emphasis added.)

45.     On this news, the Company's stock price dropped $9.72 per share, or 16.6%, to close at $48.83 per share on November 5, 2020.

### DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS

46.     Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of Defendants' violations of Sections 10(b) and 21D of the Exchange Act, and their breaches of fiduciary duties and other wrongful conduct as alleged herein and that occurred during the Relevant

Period.

47.    Plaintiff will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and has retained counsel competent and experienced in derivative litigation.

48.    Plaintiff is a current owner of the Company stock and has been an owner of Company stock during the Relevant Period.  Plaintiff understands his obligation to hold stock throughout the duration of this action and is prepared to do so.

49.    Because of the facts set forth herein, Plaintiff has not made a demand on the Board of the Company to institute this action against the Director Defendants.  Such demand would be a futile and useless act because the Board is incapable of making an independent and disinterested decision to institute and vigorously prosecute this action.

50.    At the time this suit was filed, the Board was comprised of seven (7) members -- Leschly, Melton, Vachon, Agwunobi, Dixon, Lynch and Seller.  Thus, Plaintiff is required to show that a majority of Defendants, *i.e.*, four (4), could not exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.

51.    The Director Defendants face a substantial likelihood of liability in this action because they caused the Company to issue false and misleading statements concerning the information described herein.  Because of their advisory, executive, managerial, and directorial positions with the Company, the Director Defendants had knowledge of material non-public information regarding the Company and were directly involved in the operations of the Company at the highest levels.

52.    The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith

effort to prevent or remedy that situation.

53.     The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this Complaint, Plaintiff did not make (and was excused from making) a pre-filing demand on the Board to initiate this action because making a demand would have been a futile and useless act.

54.     Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

55.     Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

56.     Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

## THE DIRECTOR DEFENDANTS WERE NOT INDEPENDENT

**Defendant Leschly**

57.     Defendant Leschly is the CEO and President of the Company.  Defendant Leschley is also a Director of the Company.  Defendant Leschley is not disinterested or independent, and therefore, is incapable of considering demand because Leschly (as CEO and President) is an

employee of the Company who derives substantially all of his income from his employment with bluebird, making him not independent.  As such, Leschley could not independently consider any demand to sue himself for breaching his fiduciary duties to the Company, because that would have exposed him to liability and threaten his livelihood.

58.     This lack of independence and financial benefits received by Defendant Leschley renders him incapable of impartially considering a demand to commence and vigorously prosecute this action.  Further, Defendant Leschley is a defendant in the securities class action entitled *Leung v. bluebird bio, Inc., et al.*, Case 1:21-cv-00777 (E.D.N.Y) ("Securities Class Action).

**Audit Committee Defendants – Vachon, Lynch and Dixon**

59.     Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for:

> The Audit Committee shall review the overall audit plan with the independent auditor and the members of management who are responsible for preparing the Company's financial statements, including the Company's Principal Financial Officer ("PFO") and/or principal accounting officer ("PAO" and together with the PFO and such other officer or officers are referred to herein collectively as the "Senior Accounting Executive")

> The Audit Committee shall review and discuss with management (including the Company's Senior Accounting Executive) and with the independent auditor the Company's annual audited financial statements, including (a) all critical accounting policies and practices used or to be used by the Company, (b) the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations" prior to the filing of the Company's Annual Report on Form 10-K, and (c) any significant financial reporting issues that have arisen in connection with the preparation of such audited financial statements.

> *                    *                    *

> The Audit Committee shall review:

> (i) any analyses prepared by management and/or the independent auditor setting forth significant financial reporting issues and judgments made in connection with the preparation of the financial statements, including analyses of the effects of alternative GAAP methods on the financial statements. The Audit Committee may

consider the ramifications of the use of such alternative disclosures and treatments on the financial statements, and the treatment preferred by the independent auditor. The Audit Committee may also consider other material written communications between the registered public accounting firm and management, such as any management letter or schedule of unadjusted differences;

(ii) major issues as to the adequacy of the Company's internal controls and any special audit steps adopted in light of material control deficiencies;

(iii) major issues regarding accounting principles and procedures and financial statement presentations, including any significant changes in the Company's selection or application of accounting principles; and

(iv) the effects of regulatory and accounting initiatives, as well as off-balance sheet transactions and structures, on the financial statements of the Company; and

(v) the certifications made by the Company's principal executive officer ("PEO") and PFO.

The Audit Committee shall review and discuss with the independent auditor (outside of the presence of management) how the independent auditor plans to handle its responsibilities under the Private Securities Litigation Reform Act of 1995, and request assurance from the independent auditor that Section 10A(b) of the Exchange Act has not been implicated.

The Audit Committee shall review and discuss with the independent auditor any audit problems or difficulties and management's response thereto. This review shall include (1) any difficulties encountered by the independent auditor in the course of performing its audit work, including any restrictions on the scope of its activities or its access to information and (2) any significant disagreements with management.

This review may also include:

(i) any accounting adjustments that were noted or proposed by the independent auditor but were "passed" (as immaterial or otherwise);

(ii) any communications between the audit team and the audit firm's national office regarding auditing or accounting issues presented by the engagement; and

(iii) any management or internal control letter issued, or proposed to be issued, by the independent auditor.

The Audit Committee shall discuss with the independent auditor those matters brought to the attention of the Audit Committee by the independent auditor pursuant to Statement on Auditing Standards No. 61, as amended ("SAS 61").

The Audit Committee shall also review and discuss with the independent auditor the report required to be delivered by such auditor pursuant to Section 10A(k) of the Exchange Act.

If brought to the attention of the Audit Committee, the Audit Committee shall discuss with the PEO and PFO of the Company (1) all significant deficiencies and

material weaknesses in the design or operation of internal control over financial reporting which are reasonably likely to adversely affect the Company's ability to record, process, summarize and report financial information required to be disclosed by the Company in the reports that it files or submits under the Exchange Act, within the time periods specified in the SEC's rules and forms, and (2) any fraud involving management or other employees who have a significant role in the Company's internal control over financial reporting.

Based on the Audit Committee's review and discussions (1) with management of the audited financial statements, (2) with the independent auditor of the matters required to be discussed by SAS 61, and (3) with the independent auditor concerning the independent auditor's independence, the Audit Committee shall make a recommendation to the Board as to whether the Company's audited financial statements should be included in the Company's Annual Report on Form 10-K for the last fiscal year.

The Audit Committee shall prepare the Audit Committee report required by Item 407(d) of Regulation S-K of the Exchange Act (or any successor provision) to be included in the Company's annual proxy statement.

**Unaudited Quarterly Financial Statements**

The Audit Committee shall discuss with management and the independent auditor, prior to the filing of the Company's Quarterly Reports on Form 10-Q, (1) the Company's quarterly financial statements and the Company's related disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations," (2) such issues as may be brought to the Audit Committee's attention by the independent auditor pursuant to Statement on Auditing Standards No. 100, and (3) any significant financial reporting issues that have arisen in connection with the preparation of such financial statements.

60.     Defendants Vachon, Lynch ad Dixon breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failed to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.  Therefore, Defendants Vachon, Lynch ad Dixon face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

## COUNT I

### (Against Defendants Leschley and Baird for Violations of Sections 10(b) and 21D Of The Exchange Act)

61.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

62.     The Company, along with Defendants Leschley and Baird are named as defendants in the Securities Class Action, which assert claims under the federal securities laws for violations of Sections 10(b) and 21D of the Exchange Act, and SEC Rule 10b-5 promulgated thereunder.  If and when the Company is found liable in the Securities Class Action for these violations of law, the Company's liability will be in whole or in part due to Defendants Leschley and Baird's willful and/or reckless violations of their obligations as officers and directors of the Company.

63.     Through their positions of control and authority as officers of the Company, Defendants Leschley and Baird were able to and did, directly and/or indirectly, exercise control over the business and corporate affairs of the Company, including the wrongful acts described in the Securities Class Action and herein.

## COUNT II

### (Against the Director Defendants for Breach of Fiduciary Duty)

64.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

65.     The Director Defendants owed the Company fiduciary obligations.  By reason of their fiduciary relationships, the Director Defendants owed the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

66.     The Director Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

67.     The Director Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties.   Among other things, the Director Defendants breached their fiduciary duties of loyalty and good faith by permitting the use of inadequate practices and procedures to estimate its reserves set aside for annuity and pension payments, allowing or permitting false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise failing to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above.   These actions could not have been a good faith exercise of prudent business judgment to protect and promote the Company's corporate interests.

68.     As a direct and proximate result of the Director Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages.   As a result of the misconduct alleged herein, the Director Defendants are liable to the Company.

69.     As a direct and proximate result of the Director Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill.   Such damage includes, among other things, costs associated with defending and/or settling securities lawsuits and governmental investigations, severe damage to the share price of the Company's stock, resulting in an increased cost of capital, and reputational harm.

## COUNT III

### (Against the Director Defendants for Waste of Corporate Assets)

70.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

71.     The wrongful conduct alleged regarding the issuance of false and misleading statements was continuous, connected, and on-going throughout the Relevant Period.   It resulted

in continuous, connected, and ongoing harm to the Company.

72.     As a result of the misconduct described above, the Director Defendants wasted corporate assets by, *inter alia*: (a) paying excessive compensation, bonuses, and termination payments to certain of its executive officers; (b) awarding self-interested stock options to certain officers and directors; and (c) incurring potentially millions of dollars of legal liability and/or legal costs to defend and/or settle actions addressing Defendants' unlawful actions.

73.     As a result of the waste of corporate assets, the Director Defendants are liable to the Company.

74.     Plaintiff, on behalf of the Company, has no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

(A)     Declaring that Plaintiff may maintain this action on behalf of the Company and that Plaintiff is an adequate representative of the Company;

(B)     Finding Defendants liable for breaching their fiduciary duties owed to the Company;

(C)     Directing Defendants to take all necessary actions to reform and improve the Company's corporate governance, risk management, and internal operating procedures to comply with applicable laws and to protect the Company and its stockholders from a repeat of the rampant wrongful conduct described herein;

(D)     Awarding damages to the Company for the harm the Company suffered as a result of the Defendants' wrongful conduct;

(E)     Awarding damages to the Company for Defendants Leschley and Baird's violations of Sections 10(b) and 21D of the Exchange Act;

(F)     Awarding Plaintiff the costs and disbursements of this action, including attorneys',

accountants', and experts' fees; and

(G)     Awarding such other and further relief as is just and equitable.

### **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated: February 24, 2021

                                **BIELLI & KLAUDER, LLC**

                                */s/ Ryan M. Ernst*
                                Ryan M. Ernst (No. 4788)
                                1204 N. King Street
                                Wilmington, DE 19801
                                Telephone: (302) 803-4600
                                Facsimile: (302) 397-2557
                                Email: rernst@bk-legal.com

                                **GAINEY McKENNA & EGLESTON**
                                Thomas J. McKenna
                                Gregory M. Egleston
                                501 Fifth Avenue, 19th Floor
                                New York, NY 10017
                                Telephone: (212) 983-1300
                                Facsimile: (212) 983-0383
                                Email: tjmckenna@gme-law.com
                                Email: gegleston@gme-law.com

                                *Attorneys for Plaintiff*